

**FILED**
**Jul 31, 2018**
**08:25 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| **Carol Abston,** | ) | **Docket No. 2018-04-0017** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 45570-2017** |
| | ) | |
| **Hillsman Modular Molding, Inc.,** | ) | **Judge Robert Durham** |
| **Employer.** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **Bridgefield Cas. Ins. Co.,** | ) | |
| **Insurer.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court conducted an expedited hearing on July 20 to determine whether Ms. Abston is entitled to another panel of neurosurgeons following Dr. Leonardo Rodriguez-Cruz's recusal as her authorized treating physician.[1] The Court holds that Ms. Abston did not provide sufficient evidence to establish she is likely to prove at trial that she requires additional medical treatment for her work-related injury. Thus, her request for an additional panel is denied.

### History of Claim

On June 20, 2017, Ms. Abston slipped in oil on Hillsman's factory floor, causing her to "face-plant" on the concrete. She was immediately taken to a clinic where she received care primarily for left upper extremity pain. A few days later, she returned to the clinic complaining of intense low-back pain radiating into both legs. Following an

---

[1] During the trial, Ms. Abston stipulated there was insufficient evidence to establish the likelihood that she could prove a causal connection between her work injury and her need for surgery or entitlement to additional temporary disability benefits. She also filed a Motion to Compel the provision of a panel of physicians, and it was decided that the Court would consider the motion during the expedited hearing.

1

MRI that revealed substantial degenerative changes in her lumbar spine, Ms. Abston received a panel of neurosurgeons from which she chose Dr. Rodriguez-Cruz.

On her initial visit on August 3, Dr. Rodriguez-Cruz noted that Ms. Abston arrived in a wheelchair and also used a walker, which he described as very unusual for someone with sciatic complaints. She described the sudden onset of extreme, disabling pain following her fall. While she admitted to a history of back pain, she made no reference to a history of radiculopathy. Dr. Rodriguez-Cruz was unable to complete a physical examination due to Ms. Abston's complaints of extreme pain. He ordered an EMG, but it was not completed, again due to Ms. Abston's pain. He diagnosed Ms. Abston with lumbago, or back pain, and left leg pain due to impingement of the sciatic nerve, but he noted that her pain complaints were disproportionate to her objective findings.

Dr. Rodriguez-Cruz eventually diagnosed Ms. Abston with foraminal stenosis and facet arthropathy at multiple levels of the lumbar spine plus osteophyte formations at the L3-L4 level. He felt that these changes were predominantly degenerative and there was no sign of traumatic changes. The only evidence of an acute injury was her history. He again noted that Ms. Abston's pain complaints seemed out of proportion to her physical findings. Nevertheless, he recommended low back surgery.

After receiving Dr. Rodriguez-Cruz's recommendation, Hillsman submitted Ms. Abston's records for evaluation by orthopedist Dr. Robert Holladay. Dr. Holladay concluded that Ms. Abston sustained a lumbar strain as a result of her June 20, 2017 injury that should have resolved within six to eight weeks of her injury. He felt that Ms. Abston's current complaints and need for surgery were due to degenerative changes unrelated to her work-related fall because he saw no evidence of either work-related injury or aggravation of her non-work related degenerative changes, which triggered the need for the recommended surgery.

Hillsman then wrote to Dr. Rodriguez-Cruz asking his opinion regarding causation. He agreed with Dr. Holladay that Ms. Abston sustained a lumbar strain as a result of her fall at work. However, he believed that her current condition and need for surgery was "at least 50% related to the pre-existing condition and findings." As a result, Hillsman denied surgery. Ms. Abston's counsel then wrote Dr. Rodriguez-Cruz with further questions regarding causation. In response, the doctor agreed that Ms. Abston sustained a back injury on June 20 that aggravated a pre-existing condition; however, it was "unknown" whether the aggravation arose "primarily" from the back injury.

Given these statements, the parties took Dr. Rodriguez-Cruz's deposition. He testified that he still believed that Ms. Abston sustained a lumbar strain as a result of her July 20 fall, but that it should have resolved in six to eight weeks. He also testified that he felt her pain complaints were disproportionate to her objective findings. The doctor agreed that Ms. Abston had pre-existing degenerative lumbar conditions that warranted

2

surgery, and in fact, surgery was her "one and only hope" for relief from her left leg symptoms.

However, Dr. Rodriguez-Cruz could not state to a reasonable degree of medical certainty that Ms. Abston's fall aggravated her pre-existing condition. He believed something else was causing her complaints, although he admitted that if the history she provided him were credible, he knew of no other reason for her current condition. Finally, Dr. Rodriguez-Cruz testified that, given what he perceived as a conflict of interest, he could no longer treat Ms. Abston, and he "insisted" that she receive treatment elsewhere.

During the trial, Ms. Abston testified that she had no leg pain before her fall and had no limitation to either her work or home activities. She testified that she never sought treatment for radiculopathy before her accident. Ms. Abston also stated that immediately upon falling she experienced, and continues to experience, intense and disabling pain and numbness and weakness in her "tailbone" and left lower extremity. Hillman's counsel introduced chiropractic records that showed Ms. Abston received treatment for low back pain radiating into both legs in 2014 and 2015. Ms. Abston admitted that she received the chiropractic treatment for low back pain but did not recall complaining of pain radiating into her legs at that time.

### Findings of Fact and Conclusions of Law

Ms. Abston need not prove every element of her claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, she must present sufficient evidence that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Here, it is undisputed that Ms. Abston sustained a lumbar strain as a result of her work-related fall on July 20, 2017. It is further undisputed that her authorized physician, Dr. Rodriguez-Cruz, stated he will no longer treat her. Thus, the question is whether Ms. Abston established that she is likely to prevail in proving she is entitled to another panel of physicians from which she may choose a physician to provide additional authorized treatment for her work injury. *Id.* The Court holds she did not.

The seminal case regarding this issue is *Limberakis v. Pro-Tech Security, Inc.*, 2017 Work. Comp. App. Bd. LEXIS 53 (Sept. 12, 2017). In *Limberakis*, the employee suffered an uncontested low back injury but failed to improve despite conservative care provided by the authorized physician. The authorized doctor eventually refused to provide further care, stating the employee would not need additional treatment directly related to the work injury. The Appeals Board held the employer was required to provide another panel of physicians to treat the employee's undisputed work injury. *Id.* at *9-10.

3

At first blush, *Limberakis* appears controlling. However, the Court finds the facts in this case distinguishable. This matter is more akin to cases where the employee is seeking medical treatment through a compensable claim previously resolved with "open medical" benefits. Despite the fact the claim is compensable, the employee still has the burden of establishing the link between the previous compensated injury and the additional treatment. *See Greenlee v. Care Inn of Jefferson City*, 644 S.W.2d 679, 680 (Tenn. 1983).

To establish causation, Ms. Abston must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or *need for medical treatment*, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (emphasis added). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

Here, no medical evidence established a connection between Ms. Abston's work injury and her current symptoms or need for additional treatment. Indeed, the opposite is true: Both Dr. Rodriguez-Cruz and Dr. Holladay believed Ms. Abston sustained a lumbar strain, which should have resolved in a few months. However, both also felt that the injury did not cause the degenerative condition that caused Ms. Abston's radiculopathy. Further, Dr. Rodriguez-Cruz could not state within a reasonable degree of medical certainty that the fall aggravated the degenerative condition, and Dr. Holladay affirmatively stated that there was no evidence of any aggravation. Ms. Abston did not provide any medical proof to the contrary. Thus, the Court holds she has not shown a likelihood in establishing a causal connection between her current complaints and her work injury.

Ms. Abston argued that she is not seeking surgery for her radiculopathy at this time, but she only requires a doctor to treat her undisputed back injury, given that Dr. Rodriguez-Cruz "recused" himself as her doctor due to a perceived conflict of interest. The Court is unpersuaded. It is clear from Dr. Rodriguez-Cruz's deposition that he believes Ms. Abston's symptoms stem from her degenerative back condition and can only possibly be corrected through surgery. However, since he cannot connect her degenerative spine to her work injury, he cannot provide the needed treatment through workers' compensation, and she must seek a remedy by other means. The Court finds this is not the same as refusing to provide treatment for a compensable injury and thus holds at this time that Ms. Abston is not entitled to another panel of physicians.

4

**IT IS, THEREFORE, ORDERED** that:

1. Ms. Abston's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing/Status Conference on **September 14, 2018, at 9:00 a. m. Central Time.** The parties must call 615-253-0010 or toll-free at 866-689-9049 to participate in the hearing. Failure to call in may result in a determination of the issues without the party's participation.

**ENTERED July 31, 2018.**

**ROBERT V. DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:

1. Dr. Rodriguez-Cruz's deposition
2. Collective exhibit submitted by Hillsman
3. Medical records submitted by Hillsman
4. Ms. Abston's affidavit
5. Dr. Rodriguez-Cruz's response to letter from Ms. Abston's counsel
6. Supplemental medical records submitted by Ms. Abston
7. Letter from Dr. Cruz to Ms. Abston

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Hillsman's position statement for Expedited Hearing
5. Notice of Expedited Hearing
6. Hillsman's Witness List
7. Hillsman's Expedited Hearing Brief
8. Hillsman's Supplemental Witness List
9. Ms. Abston's Motion to Compel Panel
10. Hillsman's Response to Motion to Compel

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on July 31, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Michael Fisher Kathryn Lee | | | X | Mfisher@ddzlaw.com klee@ddzlaw.com |
| Ryan Malone | | | X | ryan@petersonwhite.com |

PENNY SHRUM, COURT CLERK
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information
**Type of Case** [Check the most appropriate item]

    ☐   Temporary disability benefits
    ☐   Medical benefits for current injury
    ☐   Medical benefits under prior order issued by the Court

### List of Parties
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

| | | | | |
|---|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies | $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $_____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe:_____ |

11. My debts are:

Amount Owed         To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____